Argued and submitted September 4, 2014, affirmed June 22, 2016

In the Matter of the Compensation of
Roberto S. Aranda, Claimant.

FARMERS INSURANCE COMPANY
and Cardinale Fine Cabinetry, Inc.,
*Petitioners,*

*v.*

Roberto S. ARANDA,
*Respondent.*

Workers' Compensation Board
1002175; A153281

379 P3d 552

Theodore P. Heus argued the cause for petitioners. With
him on the opening brief was Scheminske & Lyons, LLP.
With him on the reply brief was Lyons Leder, LLP.

Kevin N. Keaney argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

**ORTEGA, P. J.**

Employer and its insurer seek judicial review of an order of the Workers' Compensation Board reversing an administrative law judge's order and holding that claimant's new/omitted medical condition claim for cervical radiculopathy is compensable and that employer had failed to timely move to dismiss the claim regarding the alleged *de facto* denial of claimant's new/omitted medical condition claim for cervical radiculopathy. Specifically, the board determined that employer's motion to dismiss claimant's *de facto* denial claim, which employer made during closing arguments, was too late; it should have been made before or during the hearing. The board proceeded to the merits of the claim and determined that the new/omitted medical condition claim for cervical radiculopathy is compensable. Moreover, the board concluded that claimant's attorney was entitled to a reasonable attorney fee of $25,000 as allowed by ORS 656.386(1). A board member dissented, reasoning that it was claimant's burden to prove at the hearing the elements of a *de facto* denial and that he had not done so.

Employer raises four assignments of error, of which the first three concern the establishment of a *de facto* denial. The first two assignments—contesting the board's reversal of the ALJ's consideration of employer's closing argument motion and the resultant refusal to consider the compensability of the cervical radiculopathy condition—rest primarily on an argument that the requirement, under ORS 656.262(6)(d), that a claimant communicate the belief that a claim had been incorrectly omitted is jurisdictional and, therefore, can be raised at any time. Employer also calls into question the board's reasoning concerning the untimeliness of its motion to dismiss. The third assignment shares the ALJ's and dissenting board member's reasoning that the burden to prove a *de facto* denial was on claimant and that claimant did not meet that burden. The fourth assignment of error takes issue with the fee assessment. In reviewing the board's order for substantial evidence and legal error, ORS 656.298(7), ORS 183.482(8)(a), (c), and for substantial reason, *Jenkins v. Board of Parole*, 356 Or 186, 195-96, 335 P3d 828 (2014), we reject employer's jurisdictional argument

and also conclude that the board correctly determined that employer *de facto* denied claimant's cervical radiculopathy claim. As to the challenge to the assessment of attorney fees, we conclude that the board did not err in setting a reasonable attorney fee.

In September 2007, claimant was assembling a cabinet for employer, stapling the top of the cabinet with his right hand, when the cabinet began to fall to the left. When claimant attempted to catch the falling cabinet, he felt pain in his neck and left shoulder and arm. Shortly after that injury, employer accepted his claim for a disabling neck and left shoulder strain, then closed that claim in September 2008 without an award of permanent disability. We need not recite a detailed history of claimant's related medical diagnoses following that closure, except to note that claimant filed a new/omitted condition claim for "left shoulder rotator cuff tendonitis, left cervical facetogenic pain and multilevel degenerative disc disease secondary to left-sided foraminal stenosis," which employer denied. In April 2010, claimant requested a hearing as to that denial. In June 2010, claimant also requested a hearing as to a *de facto* denial[1] of cervical radiculopathy, as well as a penalty.

A consolidated hearing was held in July 2010. At the outset of the hearing, the ALJ asked employer's and claimant's counsel to identify the issues to be addressed, and the following colloquy ensued:

---

[1] "A claim is denied *de facto* if the insurer makes no response within the period during which the insurer must either accept or deny the claim." *Crawford v. SAIF*, 241 Or App 470, 476 n 4, 250 P3d 965 (2011) (citing *SAIF v. Allen*, 320 Or 192, 211-12, 881 P2d 773 (1994). In this case, the statutory basis for a *de facto* denial is ORS 656.262(6)(d), which requires that an

"injured worker who believes that a condition has been incorrectly omitted from a notice of acceptance, or that the notice is otherwise deficient, first must communicate in writing to the insurer or self-insured employer the worker's objections to the notice pursuant to ORS 656.267. The insurer or self-insured employer has 60 days from receipt of the communication from the worker to revise the notice or to make other written clarification in response."

ORS 656.267(1) provides, in part:

"To initiate omitted medical condition claims under ORS 656.262(6)(d) or new medical condition claims under this section, the worker must clearly request formal written acceptance of a new medical condition or an omitted medical condition from the insurer or self-insured employer. * * *"

"[CLAIMANT]:  *** It's the employer's March 31, 2010, it's a partial denial of a left rotator cuff tendonitis and then a cervical facet issue and a cervical foraminal stenosis issue.

"Then there's also a *de facto* denial of a *** cervical radiculopathy.

"* * * * *

"THE ALJ:  Okay so the conditions are those as listed in the denial, the left shoulder rotator cuff tendonitis, left cervical facetogenic pain and multi-level degenerative disc disease secondary to left-sided foraminal stenosis. Is that correct?

"[CLAIMANT]:  Correct.

"* * * * *

"THE ALJ:  And then the cervical radiculopathy.

"[CLAIMANT]:  Correct.

"* * * * *

"THE ALJ:  *** And then also raised on the Request for Hearing was a penalty issue. Is that still viable?

"[CLAIMANT]:  Yeah. I'll keep the penalty issue in only as regards the cervical radiculopathy.

"* * * * *

"THE ALJ:  Is that your understanding of the issues, [employer]?

"[EMPLOYER]:  It is my understanding of the issues and employer has no cross-issues. Employer also concedes nothing; in other words, employer expects Claimant to prove each element of the issues raised by Claimant."

After making a brief opening statement regarding the compensability of claimant's conditions, claimant's counsel stated that claimant was seeking penalties for cervical radiculopathy because "the only doctors that have really commented on the cervical radiculopathy are the four doctors that [employer] wants to depose. They all support compensability of the cervical radiculopathy. There's no contrary medical opinion in the record right now." Employer responded that the medical evidence was not as "one-sided" as claimant

characterized it. Claimant's testimony comprised the rest of the hearing, and then claimant rested subject to employer's request for depositions of four physicians who had treated claimant's conditions. The ALJ ended the hearing but left the record open to allow for those depositions.

The parties conducted depositions and submitted their closing arguments in writing. Claimant's closing argument was limited to the assertion that medical evidence from the physicians treating claimant strongly established that he developed cervical radiculopathy as a direct result of the injury, that the facts were uncontroverted, and the "issue boils down to an interpretation of the medical evidence." Employer responded that, under ORS 656.262(6)(d), to prove a *de facto* denial, claimant must show (1) that he filed a written claim for that condition; (2) that the claim was received by the employer; and (3) that employer failed to issue an acceptance and denial within 60 days after receiving the written claim for the new and omitted condition. Employer argued that claimant failed to prove that he ever filed such a claim or that employer received a claim for cervical radiculopathy and, thus, failed to prove that employer *de facto* denied his alleged claim. And, employer asserted, because there was no evidence of a written request for acceptance of cervical radiculopathy as a new or omitted condition, claimant's request for a hearing on that new/omitted condition was premature, ineffective, and void and, thus, it sought to dismiss the claim for cervical radiculopathy. Employer also argued that no penalty should be awarded for the alleged *de facto* denial.[2] Claimant responded that there was an implicit agreement between the parties that there was a *de facto* denial and that only compensability was at issue.

In a written order, the ALJ sided with employer, declining a request by claimant to reopen the record and finding that employer never conceded a *de facto* denial, noting that employer's counsel specifically stated that employer "concedes nothing."[3] Further, the ALJ found that

---

[2] Employer disputed that the medical evidence supported the conclusion that the cervical radiculopathy condition was compensable.

[3] The ALJ held a conference call to address the arguments raised in employer's closing argument. Claimant argued that the parties had implicitly

"claimant failed to establish that a claim for a cervical radiculopathy condition was filed, and thus, failed to establish a *de facto* denial of a cervical radiculopathy condition. As a result, compensability of the cervical radiculopathy condition is not currently at issue. Because I find that claimant failed to establish a *de facto* denial, I decline to award a penalty pursuant to ORS 656.262(11)."[4]

Claimant appealed to the board, contesting the ALJ's evidentiary ruling. The board remanded the order to the ALJ because it lacked the requisite reasoning justifying the decision not to reopen the record. The ALJ amended the opinion and order to satisfy the board's directive and held to the original disposition about claimant's failure to establish a *de facto* denial. Claimant again appealed to the board.

The board reversed the portion of the ALJ's order that declined to consider the compensability of the cervical radiculopathy claim, addressed the claim's merits, and found it to be compensable. In doing so, the board relied on two administrative rules: OAR 438-006-0031 and OAR 438-006-0036. OAR 438-006-0031 provides that the party requesting a hearing must file, on a form prescribed by the board, "a specific listing of all issues to be raised at the hearing and all relief requested." In turn, OAR 438-006-0036 provides that the opposing party, also on a form prescribed by the board, file a "response specifying the respondent's

---

agreed that the claim was made and not responded to within the period of time allowed and that he was taken by surprise by employer's argument. Employer's attorney took issue with claimant's assertion and noted employer's assertion at the outset of the hearing that employer would "hold [claimant] to every element of his proof" and that counsel for insurer never agreed that there was a *de facto* denial. According to claimant, the time to raise the failure to communicate was at the outset of the hearing and not after depositions and in closing arguments and, by not doing so earlier, employer waived its ability to do so. In response to claimant's attempt to enter into evidence a letter demonstrating that a written communication regarding the cervical radiculopathy condition was made, employer argued that it was too late to reopen the record to offer any additional evidence. Soon after, the ALJ wrote to the parties that she declined to reopen the record for new evidence from claimant. Claimant submitted a rebuttal argument and enclosed proposed Exhibit 36Aa, which was a copy of a letter offered to prove that he had made the claim for cervical radiculopathy. Employer objected to the letter and also noted the lack of proof that the letter had been mailed or received by employer.

[4] The ALJ determined that, even assuming the letter which claimant sought to introduce was part of the record, the letter did not establish that claimant satisfied the requirements of ORS 656.267(1).

position on the issues raised and relief requested and any additional issues raised and relief requested by the respondent." Both rules also provide that, if "during the hearing, the evidence supports an issue or issues not previously raised, the [ALJ] may allow the issue(s) to be raised during the hearing." The board noted that claimant had specifically raised the issues of (1) a *de facto* denial of cervical radiculopathy, (2) penalties, (3) attorney fees, and (4) costs. The board also remarked that employer had not filed a response "as required by OAR 438-006-0036" and that "'during the hearing,'" employer "did not 'provide a response specifying [its] position on the issues raised and relief requested' by claimant," nor did "employer, 'during the hearing,' identify that it had 'any additional issues to be raised' or 'relief requested.'"

The board further explained that "employer first raised the premature hearing request, and requested relief in the form of a dismissal of that request on the alleged *de facto* denial, in written closing arguments." Relying on the board's own precedent, it stated that it had "previously determined that an issue first raised in closing arguments is not raised 'during the hearing,' within the meaning of OAR 438-006-0036; thus, such issues are ordinarily not considered." The board declined to make an exception in this case, and concluded as follows:

> "Thus, under these particular circumstances, the employer's opening argument statements that it 'concede[d] nothing' and 'expecte[d] claimant to prove each element of the issues raised by claimant' are most reasonably interpreted as concerning the compensability of the new/omitted medical condition claim for cervical radiculopathy, *i.e.*, the existence and cause of that condition, and not as specifically asserting that it had never received such a claim. Indeed, that interpretation is consistent with the parties' actions of continuing the hearing for depositions of four medical experts, all of which concerned the existence of the claimed cervical radiculopathy and its causal relationship to the work injury. * * *

> "* * * [I]f a carrier's response is that there is no *de facto* denial because it has never received a claim, we would expect that response to be made at the outset of the hearing because, if true, there would be no basis for proceeding

to litigate a purported denial of a nonexistent claim. *See also John R. Nolan*, 46 Van Natta 434 (1994) (declining to consider the carrier's argument raised first on review that the claimant did not file a 'legally cognizable claim,' and, alternatively finding that by proceeding to litigate the merits of that claim at hearing, the carrier waived any procedural defect regarding a premature hearing request on a 'de facto' denial).

"Therefore, under these particular circumstances, we find that the employer did not timely raise the premature hearing request/dismissal issue regarding the alleged *de facto* denial of claimant's new/omitted medical condition claim for cervical radiculopathy. Consistent with our longstanding case precedent, we will not consider employer's 'closing argument challenge to the validity of the claim.' * * * Consequently, we reverse that portion of the ALJ's order that declined to address the compensability of claimant's new/omitted medical condition claim for cervical radiculopathy."

In reaching a different conclusion, the dissenting board member explained that, because "claimant bears the burden of proof on the compensability of an alleged *de facto* denial of a new/omitted medical condition claim," he "must affirmatively satisfy all elements establishing compensability of such a claim." In this case, the dissenting board member stated that

"because the employer did not concede the existence of a new/omitted medical condition claim for cervical radiculopathy, notice or knowledge of such a claim, or a failure to accept or deny such a claim within 60 days of having such notice or knowledge, claimant was *required*, as part of his case, to prove each of those elements, *in addition* to proving the compensability of the claim itself. Although the employer could have stipulated to those elements, it did not."

(Emphasis in original.) Moreover, the dissenting board member concluded that, "when the record closed *without* claimant submitting any evidence on the filing and receipt of the disputed claim, the employer was entitled to point out that deficiency in its closing argument." (Emphasis in original.)

Employer contends in its first and second assignments of error that the board erred by not considering its closing argument challenge to the validity of the *de facto* denial claim and by reversing the portion of the ALJ's order that declined to address the compensability of the cervical radiculopathy claim. Employer's argument is in three parts, of which the first two posit that neither the ALJ nor the board has jurisdiction over claimant's cervical radiculopathy claim. We reject the jurisdictional argument without further written discussion and proceed to the third part of employer's argument.

Employer challenges the board's reasoning by asserting that, "even if claimant's failure to comply with ORS 656.262(6)(d) * * * is mere 'procedural error' raisable only at hearing, [employer] did not waive that issue at hearing." According to employer, the board reasoned in its order that employer *waived* its right to challenge claimant's *de facto* denial claim as premature by not raising the issue early enough at the hearing.[5] And, in employer's view, because waiver occurs, not by silence, but when a known right is "intentionally relinquished," *Drews v. EBI Companies*, 310 Or 134, 151, 795 P2d 531 (1990), its silence in this case did not constitute a waiver of its right to challenge the *de facto* denial claim as premature.

However, employer's argument does not fairly characterize the board's reasoning. The board's order did not rely on a finding that employer had *waived* its right to raise the premature hearing/dismissal issue, but concluded, rather, that, under OAR 436-006-0036, the time to raise "any additional issues" or "relief requested" was not at closing argument but before or during the hearing; the board's "see also" citation to a case with an alternative finding of waiver does

---

[5] To reprise, the board stated:

"[I]f a carrier's response is that there is no *de facto* denial because it has never received a claim, we would expect that response to be made at the outset of the hearing because, if true, there would be no basis for proceeding to litigate a purported denial of a nonexistent claim. *See also John R. Nolan*, 46 Van Natta 434 (1994) (declining to consider the carrier's argument raised first on review that the claimant did not file a 'legally cognizable claim,' and, alternatively finding that by proceeding to litigate the merits of that claim at hearing, the carrier waived any procedural defect regarding a premature hearing request on a 'de facto' denial)."

not persuade us otherwise. A conclusion that an argument was not timely raised does not necessarily constitute a finding of waiver.

Employer, in its third assignment of error, also posits that (1) claimant failed to establish that he clearly requested formal written acceptance of his cervical radiculopathy condition, as required by ORS 656.267(1) and ORS 656.262(6)(d), or that employer received such a request, and (2) absent such evidence, claimant failed to establish a *de facto* denial of a claim for cervical radiculopathy. That is, according to employer, proof of a *de facto* denial requires three things: (1) that claimant requested acceptance of a condition; (2) that the request was received by employer; and (3) that employer failed to accept or deny the request within 60 days of receiving it. Although the board determined that employer's opening argument statements that it "concedes nothing" and "expects [c]laimant to prove each element of the issues raised by [c]laimant" were insufficient to raise an issue that the hearing request was *premature and should be dismissed,* employer argues that that determination does not address whether claimant had met his burden to prove a *de facto* denial. As we explain below, however, the board's reasoning is sufficient for us to conclude that it did not err in concluding that claimant's claim was *de facto* denied.

That is because employer's argument—that it was claimant's burden to prove the elements required for *de facto* denial and that he failed to prove those elements— overlooks the board's explanation that, for a worker's compensation hearing, OAR 438-006-0036 imposes the requirement that, before the hearing, the party defending against a request for hearing must "specif[y its] position on the issues raised by the party requesting the hearing" or, at the hearing, raise an issue not previously raised. That rule does not qualify the obligation to identify issues as dependent on which party has the burden of production. Put differently, by asserting that the board erred when it determined that claimant's cervical radiculopathy claim was *de facto* denied and compensable without claimant having proved the necessary elements, employer is asserting that its obligation to challenge the claimed *de facto* denial was excused because

it was claimant's burden to prove the elements necessary to establish such a claim.

Employer's argument loads more freight on the board's reasoning than it can bear. The board's determination that it would expect employer to *point out* at the outset of the hearing that employer never received the claim for cervical radiculopathy condition is not a determination that employer was required to *disprove* that claimant made the claim.

Moreover, we understand the board's reasoning to be that employer's statements that "employer concedes nothing" and "expects claimant to prove each element of the issues raised by [c]laimant" as insufficient responses under OAR 438-006-0036. That is, the board found that those statements are

> "most reasonably interpreted as concerning the compensability of the new/omitted medical condition claim for cervical radiculopathy, *i.e.*, the existence and cause of that condition, and not as specifically asserting that it had never received such a claim. Indeed, that interpretation is consistent with the parties' actions of continuing the hearing for descriptions of four medical experts, all of which concerned the existence of the claimed cervical radiculopathy and its causal relationship to the work injury."

We understand that finding to mean that employer's statements were not particular enough to alert claimant or the ALJ that employer was challenging the existence of a *de facto* denial.

For all those reasons, we conclude that the board did not err in proceeding to the compensability of claimant's claim for cervical radiculopathy. Accordingly, we turn to employer's fourth assignment of error, challenging the board's assessment of attorney fees in the amount of $25,000. Employer raises three arguments concerning that assignment: (1) that the statutory provision allowing for reasonable attorney fees, ORS 656.386(1), does not apply in this case because claimant did not prevail over a "denied claim"; (2) that the amount of fees assessed is "excessive and unreasonable based on the circumstances of this case"; and (3) that the board failed to adequately explain the basis for

the attorney fee award and, thus, that the assessment lacks substantial reason.

Before turning to employer's first argument, we set out the relevant provisions of ORS 656.386(1) and the board's reasoning. That statute provides, in relevant part:

"(a) In all cases involving denied claims where a claimant finally prevails against the denial in an appeal to the Court of Appeals or petition for review to the Supreme Court, the court shall allow a reasonable attorney fee to the claimant's attorney. In such cases involving denied claims where the claimant prevails finally in a hearing before an Administrative Law Judge or in a review by the Workers' Compensation Board, then the Administrative Law Judge or board shall allow a reasonable attorney fee. In such cases involving denied claims where an attorney is instrumental in obtaining a rescission of the denial prior to a decision by the Administrative Law Judge, a reasonable attorney fee shall be allowed.

"(b) For purposes of this section, a 'denied claim' is:

"(A) A claim for compensation which an insurer or self-insured employer refuses to pay on the express ground that the injury or condition for which compensation is claimed is not compensable or otherwise does not give rise to an entitlement to any compensation;

"(B) A claim for compensation for a condition omitted from a notice of acceptance, made pursuant to ORS 656.262(6)(d), which the insurer or self-insured employer does not respond to within 60 days; [or]

"(C) A claim for an aggravation made pursuant to ORS 656.273 (2) or for a new medical condition made pursuant to ORS 656.267, which the insurer or self-insured employer does not respond to within 60 days[.]"

As allowed by ORS 656.386(1), the board determined:

"Claimant's attorney is entitled to an assessed fee for services at hearing on review regarding the *de facto* denial of claimant's cervical radiculopathy claim. ORS 656.386(1).[11] After considering the factors set forth in OAR 438-015-0010(4) and applying them to this case, we find that a reasonable fee for claimant's attorney's services at hearing, on review, on remand, and again on review is

$25,000, payable by the employer. In reaching this conclusion, we have particularly considered the time devoted to the issue (as represented by the record, claimant's appellate briefs, his counsel's attorney fee submission, and the employer's objection), the complexity of the issue, the value of the interest involved, the nature of the proceeding, and the risk that counsel may go uncompensated."

The board rejected, in footnote 11,

"the employer's position that claimant has not prevailed over a denial within the meaning of ORS 656.386(1). As set forth above, claimant requested a hearing, specifically identifying the compensability of a *de facto* denial of a new/ omitted medical condition claim for cervical radiculopathy. For the reasons expressed above, claimant has prevailed over that denial. Accordingly, an attorney fee award under ORS 656.386(1) is justified."

With that in mind, employer argues that an assessment of attorney fees under ORS 656.386 is not authorized because claimant did not prevail against a "denied claim" as defined in subsection (b)(A), which requires that "an insurer or self-insured employer refuses to pay on the express ground that the injury or condition for which compensation is claimed is not compensable." In employer's view, subsection (b)(A) does not apply because there was no express denial of a cervical radiculopathy condition claim. Employer also contends that,

"[a]t first glance, subsection (b)(B) and (C) appear to encompass '*de facto*' denials, but the language is more restrictive than merely a *de facto* denial. Specifically, a fee is authorized under those sections only if a claimant files a claim 'made pursuant to' ORS 656.262(6)(d) or ORS 656.267. As discussed above, there is absolutely no evidence proving such a claim was made pursuant to those statutes."

In other words, employer reprises its argument that there was no proof of a written communication to employer of his medical condition, asserting that without proof of such a written communication, ORS 656.386(1) does not provide for a reasonable attorney fee.

We do not address employer's contention that there is no "denied claim" within the meaning of subsection (b)(A) because we understand the board's explanation in footnote

11 to mean that the "denied claim" in this matter was under subsection (b)(B). That is, the board determined that claimant had prevailed over a "denied claim" because he requested a hearing, "specifically identifying the compensability of a *de facto* denial of a new/omitted medical condition claim for cervical radiculopathy." Moreover, we readily conclude that that determination is correct. The evidentiary issue that employer raises in support of its challenge fails for the reasons we articulated in our discussion of employer's third assignment of error.

Moreover, we reject employer's argument that the board's explanation was inadequate. We acknowledge that in *Schoch v. Leupold & Stevens*, 325 Or 112, 119, 934 P2d 410 (1997), the Supreme Court held that it was "not apparent to [the court] from a mere recitation" of the factors set out in OAR 438-015-0010(4)[6] how the board arrived at the amount of fees it awarded under ORS 656.386(1) in light of an award that was less than half the amount requested by the claimant's counsel. The court also stated that, at "a minimum, where the basis for an agency's discretionary choice is not obvious, an agency must provide sufficient explanation to allow a reviewing court to examine the agency's action in relation to the range of discretion granted by the legislature, the agency's own 'rule, officially stated agency position, or a prior agency practice,' and other statutory and constitutional provisions." *Id.* at 118 (quoting ORS 183.482(8)(b)). However, we distinguish the board's reasoning from the circumstances in *Schoch* for two reasons.

---

[6] OAR 438-015-0010(4) provides:

"In any case where an Administrative Law Judge or the Board is required to determine a reasonable attorney fee, the following factors shall be considered:

"(a)  The time devoted to the case;

"(b)  The complexity of the issue(s) involved;

"(c)  The value of the interest involved;

"(d)  The skill of the attorneys;

"(e)  The nature of the proceedings;

"(f)  The benefit secured for the represented party;

"(g)  The risk in a particular case that an attorney's efforts may go uncompensated; and

"(h)  The assertion of frivolous issues or defenses."

First, claimant's counsel requested $23,700 in attorney fees, an amount that is not, relatively speaking, a significant departure from the $25,000 awarded by the board. Second, in addition to the OAR 438-015-0010(4) factors the board identifies, the board also stated that it considered "the time devoted to the [*de facto* denial] issue (as represented by the record, claimant's appellate briefs, his counsel's attorney fee submission, and the employer's objection)." Given that claimant's attorney submitted an affidavit identifying his hourly rate and time spent on the matter and that the award was close to the amount requested by claimant's attorney, we conclude that the board's reliance on the circumstances of the proceeding concerning the amount of time spent by claimant's attorney and the other factors identified by the board are adequate for our review. *Cf. Wal-Mart Associates, Inc. v. Lamb*, 278 Or App 622, 377 P3d 681 (2016) (concluding that the record lacked any rationale for the award of attorney fees and noting that a fee petition is unnecessary for judicial review). As to the reasonableness of the fees, which we review for abuse of discretion, *SAIF v. Wart*, 192 Or App 505, 507, 87 P3d 1138, *rev den*, 337 Or 248 (2004), we conclude the board did not abuse its discretion.

Affirmed.